## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FOREMAN SALMOND, | : | Civil No. 3:15-cv-1456 |
| | : | |
| Petitioner | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| CAPTAIN S. SPAULDING, | : | **FILED** |
| | : | **SCRANTON** |
| Respondent | : | NOV 1 0 2016 |

**MEMORANDUM**   Per_____

DEPUTY CLERK

### I.   Introduction

Foreman Salmond, an inmate confined in the Allenwood Federal Correctional Institution, White Deer, Pennsylvania, ("FCI-Allenwood"), filed the instant *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Salmond challenges the Bureau of Prisons' ("BOP") calculation of his federal sentence. (*Id.*). Specifically, he asserts that he should receive credit toward his federal sentence for time he spent in the custody of Pennsylvania officials serving a sentence imposed by Cumberland County, Pennsylvania. (*Id.*). As such, Salmond claims that he is entitled to credit for the period from November 26, 2009 through December 20, 2011. (*Id.* at p. 14). The petition is ripe for disposition and, for the reasons set forth below, will be denied.

### II.   Background

On November 26, 2009, Salmond was arrested by police in Cumberland County, Pennsylvania, on charges of fleeing or attempting to elude a police officer and driving under

the influence. (Doc. 4, Ex. A, Declaration of Alan Ray, Management Analyst at the BOP's

Designation and Sentence Computation Center, Grand Prairie, Texas, ("Ray Decl."), ¶ 5;

*Commonwealth v. Salmond*, Docket No. CP-21-CR-0003425-2009). At the time of

Salmond's arrest by the Cumberland County police, he was on parole for a case out of

Snyder County, Pennsylvania. (Ray Decl. ¶ 5; *Commonwealth v. Salmond*, Docket No.

CP-55-CR-0000389-2001).

On December 22, 2009, Salmond was borrowed by the United States Marshals

Service ("USMS") via federal writ of habeas corpus ad prosequendum for processing of

federal criminal charges in the United States District Court for the Middle District of

Pennsylvania. (*Id.* at ¶ 6; Doc. 4, Ex. A, Attach. 3, USMS Individual Custody and Detention

Report). On March 23, 2010, Salmond was returned to the primary jurisdiction of

Cumberland County authorities. (*Id.*).

On July 6, 2010, Salmond was sentenced by the Cumberland County Court to a

twelve to twenty-four month term of imprisonment for fleeing or attempting to elude a police

officer. (Ray Decl. ¶ 7; Doc. 4, Ex. A, Attach. 2, Sentence Summary). Salmond was

awarded credit on this sentence for the time period from November 26, 2009, the date of his

arrest, to December 20, 2011, the date when the state sentence ended. (*Id.*).

On August 10, 2010, Salmond was recommitted as a parole violator under the

Snyder County case. (Ray Decl. ¶ 8; Doc. 4, Ex. A, Attach. 4, Sentence Status Summary,

Snyder County Case No. CP-389-2001).  On May 7, 2012, Salmond's parole was revoked on the Snyder County case.  (Id.).

On January 11, 2011, Salmond entered a guilty plea in federal court to a superseding information charging him with distribution of five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a).  (USA v. Salmond, Criminal No. 1:09-cr-0377 (M.D. Pa.) at Doc. 50).  On December 21, 2011, Salmond was sentenced by the United States District Court for the Middle District of Pennsylvania to a 120-month term of imprisonment for distribution and possession with intent to distribute five grams and more of cocaine base.  (Ray Decl. ¶ 9; Doc. 4, Ex. A, Attach. 5, Judgment in a Criminal Case, Criminal No. 1:09-cr-0377).  The Honorable Sylvia H. Rambo, the sentencing judge, ordered that Salmond's sentence be served consecutive to the parole revocation term imposed by Snyder County and concurrent to the term imposed by Cumberland County.  (Id.).

On February 13, 2013, Salmond was re-paroled from his Snyder County violator term.  (Ray Decl. ¶ 10; Doc. 4, Ex. A, Attach. 6, Memorandum for Judgment and Commitment File).  Salmond remained in state custody on the federal detainer until the USMS took him into exclusive federal custody on March 28, 2013, for service of his federal sentence.  (Ray Decl. ¶ 10; Doc. 4, Ex. A, Attach. 3, Report).

On July 21, 2014, the Chief of the BOP's Designation and Sentence Computation Center sent a letter to Judge Rambo, advising that the BOP could not comply with the

3

Judgment ordering a concurrent sentence. (Ray Decl. ¶ 11; Doc. 4, Ex. A, Attach. 7, pp. 1-2, Letter to Judge Rambo). The BOP Chief requested further clarification of the sentence. (*Id.*). In response, Judge Rambo issued a letter stating that since Salmond completed service of his Cumberland County sentence prior to imposition of the 120-month federal sentence, there could be no concurrent sentence and no credit available to Salmond. (Doc. 4, Ex. A, Attach. 7, pp. 3-4, Letter to the BOP's Designation and Sentence Computation Center).

The BOP computed Salmond's 120-month federal sentence as commencing on March 28, 2013, the date he was taken into custody by the USMS to begin serving his federal sentence. (Ray Decl. ¶ 12). The BOP awarded Salmond prior custody credit for the period of time from February 14, 2013, the day the Snyder County sentence ended, to March 27, 2013, the day before the USMS took him into exclusive federal custody. (*Id.*). This period of time was not applied to any of Salmond's Pennsylvania state sentences. (*Id.*). All other time that Salmond spent in the custody of Cumberland or Snyder County authorities, including the period from November 26, 2009 through December 20, 2011, were credited to his Cumberland or Snyder County sentences. (*Id.*). Salmond's projected release date on his federal sentence is October 31, 2021, via good conduct time release. (*Id.*; Doc. 4, Ex. A, Attach. 8, BOP SENTRY Report, Public Information Inmate Data; BOP Online Inmate Locator, https://www.bop.gov/inmateloc/).

4

In his habeas petition, Salmond argues that the BOP improperly calculated his federal sentence and that he should have received credit against his federal sentence for the time served from November 26, 2009 through December 20, 2011. (Doc. 1). Salmond claims that the federal sentencing judge ordered that his federal sentence run concurrent with his Cumberland County sentence. (*Id.* at pp. 11-14). Respondent argues that the BOP properly calculated Salmond's federal sentence. (Doc. 4).

## III. Discussion

The Attorney General is responsible for computing federal sentences, *see* 18 U.S.C. § 3585; *United States v. Wilson*, 503 U.S. 329, 333 (1992); *Armstrong v. Grondolsky*, 341 F. App'x 828 (3d Cir. 2009), and has delegated that authority to the BOP under 28 C.F.R. § 0.96. Computation of a federal sentence is governed by 18 U.S.C. § 3585, and is comprised of a two-step determination. First, the date on which the federal sentence commences and, second, the extent to which credit may be awarded for time spent in custody prior to commencement of the sentence ("prior custody credit").

### A. Primary Custody

Under the primary custody doctrine, the sovereign that first arrests an individual has primary custody over him and has priority over all other sovereigns that subsequently arrest him. *Smith v. Meeks*, 2013 WL 3388913, *2 (W.D. Pa. 2013), *citing*, *Ponzi v. Fessenden*, 258 U.S. 254 (1922); *Bowman v. Wilson*, 672 F.2d 1145, 1153-54 (3d Cir.1982); *George v.

5

*Longley*, 463 F. App'x 136, 138 n.4 (3d Cir. 2012). The sovereign with primary custody "is entitled to have the individual serve a sentence it imposes before he serves a sentence imposed by any other jurisdiction, regardless of the chronological order of sentence imposition." *Smith*, 2013 WL 3388913 at *2, *citing*, *Bowman*, 672 F.2d at 1153-54. "Primary custody remains vested in the sovereign that first arrests the individual until its sentence expires and it releases the inmate, or until it relinquishes its priority through some other act, such as granting bail, dismissing the charges, or releasing the individual on parole." *Id.*, *citing*, *George*, 463 F. App'x at 138 n. 4.

The primary custody doctrine has been incorporated into the BOP policies and is helpful in determining when the federal sentence commences. *Smith*, 2013 WL 3388913 at *3. A threshold issue when determining the date of a federal sentence is whether the defendant was in primary federal or primary non-federal custody at the time the federal sentence was imposed. If a defendant is in primary federal custody at the time of sentencing, the federal sentence will commence upon imposition. *Id.* If a defendant is not in primary federal custody, *i.e.* in primary state or local custody, at the time of sentencing (regardless of whether the federal sentence was imposed before the state sentence), the BOP must determine whether the federal sentencing court expressly indicated an intent as to whether the federal sentence should run concurrently or consecutively with the

non-federal sentence.[1]  *Id.*  If the federal sentencing court expressly indicated an intention to have its sentence run concurrently with the non-federal sentence, the federal sentence commences upon imposition.  *Id.*  If the federal sentencing court is silent as to its intent to run the sentence concurrently or consecutively, the court's silence may be construed as an intent to impose a consecutive sentence.  *See* 18 U.S.C. § 3584(a).  In those cases, the federal sentence does not commence until primary state custody over the defendant is relinquished and the defendant is released to federal custody.  *Smith*, 2013 WL 3388913 at *3 (citing 18 U.S.C. § 3585(a); BOP Program Statement 5880.28, Chapt. 1, pp. 2-13, 31-33).

### B.    Commencement of Sentence

The BOP generally determines the date upon which a federal sentence commences. *See, e.g., Goodman v. Grondolsky*, 427 F. App'x 81, 82 (3d Cir. 2011) ("In calculating a federal sentence, the BOP first determines when the sentence commenced and then determines whether the prisoner is entitled to any credits toward his sentence.").  A sentence cannot begin to run earlier than on the date it is imposed.  *Rashid v. Quintana*, 372 F. App'x 260, 262 (3d Cir. 2010), *citing, United States v. Labeille-Soto*, 163 F.3d 93, 98 (2d Cir. 1998).

---

[1]    Section 3584(a) of Title 18 of the United States Code states that "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a).

7

Section 3585 of Title 18 of the United States Code provides, in part:

(a) Commencement of sentence.  A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

### C.      Prior Custody Computation

Section 3585(b) of Title 18 of the United States Code provides:

(b)  Credit for prior custody. - A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-

> (1)  as a result of the offense for which the sentence was imposed; or

> (2)  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

that has not been credited against another sentence.

18 U.S.C. § 3585(b).  Thus, under § 3585(b), prior custody credit cannot be granted if the prisoner has received credit toward another sentence.  "Congress has made clear that a defendant could not receive a double credit for his detention time." *Wilson*, 503 U.S. at 333.

### D.      Application

The record before the Court reveals that on November 26, 2009, Salmond was arrested by local/state authorities and charged with fleeing or attempting to elude a police officer and driving under the influence.  (Ray Decl. ¶ 5).  On December 22, 2009, Salmond

8

was borrowed by federal authorities via federal writ of habeas corpus ad prosequendum for

processing of federal criminal charges. (Ray Decl. ¶ 6; Doc. 4, Ex. A, Attach. 3, USMS

Individual Custody and Detention Report). The state retained primary jurisdiction over

Salmond as a result of his pending state criminal charges. Thus, Salmond's temporary

transfer to federal custody pursuant to a federal writ of habeas corpus ad prosequendum

was insufficient to interrupt the state's priority jurisdiction. *George*, 463 F. App'x at 140,

*citing, Ruggiano*, 307 F.3d at 125 n. 1. As such, Salmond was in primary state custody at

the time of sentencing on his federal charges.

On December 21, 2011, Salmond was sentenced on his federal charges for

distribution and possession with intent to distribute five grams and more of cocaine base.

(Ray Decl. ¶ 9; Doc. 4, Ex. A, Attach. 5, Judgment in a Criminal Case, Criminal No. 1:09-

cr-0377). The federal sentencing judge ordered that Salmond's sentence be served

consecutive to the parole revocation term imposed by Snyder County and concurrent to the

term imposed by Cumberland County. (*Id.*).

In deciding Salmond's federal sentence computation, the Court notes that

Salmond's federal sentence commenced on March 28, 2013, the date he was taken into

exclusive federal custody by the USMS to begin service of his federal sentence. Salmond

received prior custody credit toward his federal sentence from February 14, 2013, the day

his Snyder County sentence ended, to March 27, 2013, the day before the USMS took him

into exclusive federal custody.  Salmond now seeks additional prior custody credit from

November 26, 2009 through December 20, 2011.  Pursuant to 18 U.S.C. § 3585(b),

Salmond is prohibited from receiving prior custody credit for this time in Pennsylvania

custody because it was already credited to his Cumberland County sentence.  The state

sentencing court credited the time served from November 26, 2009 (the date of arrest) to

December 20, 2011 (the date when the state sentence ended), against his twelve to twenty-

four month state sentence for fleeing or attempting to elude a police officer.  (Doc. 4, Ex. A,

Attach. 2, providing that "[c]redit is applied to CP3425-2009 from the date of arrest

(11/26/2009) as listed on the orders to the day before custody for return (12/20/2011)").

Because § 3585(b) prohibits double credit, this time credited to his state sentence could not

also be credited to his federal sentence.  *See Wilson*, 503 U.S. 329; *Chambers v. Holland*,

920 F. Supp. 618, 623 (M.D. Pa. 1996); *Labeille-Soto*, 163 F.3d at 99.

Moreover, although Salmond's federal sentence was initially ordered to run

concurrent with his Cumberland County sentence, and consecutive to his parole violator

term from Snyder County, the Cumberland County sentence ended the day before

Salmond's sentencing in federal court.  Therefore, since Salmond was not serving a state

sentence at the time of the imposition of the federal sentence, there can be no concurrent

sentence, and no credit available toward Salmond's federal sentence for the Cumberland

County term.

Pursuant to 18 U.S.C. § 3585(b), this Court finds that the BOP properly computed Salmond's sentence, including any time for prior custody, and his claims to the contrary are without merit.

## IV.    Conclusion

The BOP correctly determined when Salmond's federal sentence commenced and the credits toward the federal sentence to which Salmond is entitled.  Accordingly, the habeas petition will be denied.

An appropriate Order shall issue.

Date: November _10_, 2016

Robert D. Mariani
United States District Judge